## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RUSSELL MARCILIS II, FELICIA MARCILIS,
JASMINE MARCILIS, RUSSELL MARCILIS I,
and MARIE MARCILIS,

       Plaintiffs,

v.                                    Case No. 09-11624
                                    Hon. Lawrence P. Zatkoff

REDFORD TOWNSHIP, BRIAN JONES,
ERIC WOODALL, ERIC GILLMAN,
JOHN BUTLER, KEVIN JEZIOROWSKI,
WILLIAM HAND, CHRIS RICHARDSON,
and OTHER UNNAMED OFFICERS,
in their individual and official capacities,

       Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 18, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on separate Motions for Summary Judgment filed by

Defendant Chris Richardson [dkt 52] and Defendants Redford Township, Brian Jones, Eric Woodall,

Eric Gillman, John Butler, Kevin Jeziorowski, and William Hand [dkt 54]. Both motions have been

fully briefed. The Court finds that the facts and legal arguments are adequately presented in the

parties' papers such that the decision process would not be significantly aided by oral argument.

Therefore, pursuant to E.D. Mich. L.R. 7.1 (f)(2), it is hereby ORDERED that the Motions be

resolved on the briefs submitted, without oral argument. For the following reasons, Defendant

Richardson's Motion for Summary Judgment and the remaining Defendants' Motion for Summary Judgment are GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

Plaintiffs' complaint arises from a federal task-force narcotics raid at two homes by Drug Enforcement Agents (Brad Boyle and Dave Livingston), Redford police officer (Kevin Jeziorowski), Redford Township police officers ( Brian Jones, Eric Woodall, Eric Gillman, and John Butler), and Detroit police officer Chris Richardson (collectively "Defendants").  On March 2, 2007, search warrants were executed on two homes: 5966 Manistique Street, Detroit, Michigan, where Russell Marcilis and Marie Marcilis lived, and where Jasimine Marcilis was visiting;  and 17268 Suffield, Clinton Township, Michigan, where Russell Marcilis, II, and Felicia Marcilis lived.  Probable cause for the search warrants was based on information from a confidential informant—who provided information about the possession and sale of illegal narcotics at the locations, as well as information from controlled purchases of cocaine—and Officer Jones's corroborating investigation.  This information was included in affidavits attached to each search warrant, which were then signed by a magistrate judge.

### A.    17268 SUFFIELD, CLINTON TOWNSHIP, MICHIGAN

According to Defendants, upon arriving at the home, the officers knocked and announced their presence and purpose.  After waiting fifteen seconds, no one answered the front door so the officers forcibly entered.  Plaintiffs disagree; Russell II and Felicia allege that they did not hear Defendants knock and announce.  They were lying awake in their bed when Defendants allegedly entered the home and held them at gun point.  Defendants then ordered Russell II and Felicia to lie on the floor.

During the search, Officer Jones asked Russell II where the fifteen kilograms of cocaine and $300,000 were located. After approximately ten minutes, Russell II and Felicia were handcuffed and placed in a Redford Police car, which they remained in for thirty-minutes. When the search ended, Felicia was jailed at the Redford Police station for approximately eight hours. She was not questioned or charged with any crime. Unlike Felicia, Russell II contends that he spent three days in jail. Defendants' dispute this and contend that Russell II and Felicia were only held for one day at the Redford Police Station. At the time of his release, Russell II was not charged with any crime.

B. **5966 MANISTIQUE STREET, DETROIT, MICHIGAN**

After searching the Suffield home, Defendants arrived at the Manistique home. Russell (Russell II's father) and Marie lived at the home. Jasmine Marcilis, a granddaughter, was visiting Russell and Marie on the day of the search. According to Defendants, the officers knocked and announced before entering through the open front door and the second, unlocked security door. Plaintiffs also dispute this; Russell and Marie claim Defendants failed to knock or announce before entering in combat gear with masks on their faces (according to Russell II and Felicia, 17268 Suffield was entered with officers wearing similar combat gear). Russell, Marie, and Jasmine allege that Defendants entered through the front door of the home unannounced, pointed guns at them, detained them for 90 minutes, and tore up their house.

When Defendants entered the home, the upper-half of Russell's body was covered in bandages because he was seriously burned from a cooking accident. Defendants allegedly placed Russell on the floor because he was responding slowly to an order to lie on the floor, and Defendants grabbed Marie's arms and pushed her to the couch, causing bruises.

Marie also suffered from two medical conditions—cancer and diabetes. These conditions

require her to take several medications. During the search, Marie experienced difficulty breathing; when she asked Defendants if she could take her medication, the request was denied. According to Marie, Defendants "took her medications, destroyed vials of insulin, and broke her insulin needles," even though the medications were in prescription containers and she offered to show the medical documentation regarding them.

The search lasted ninety minutes. According to Plaintiffs, Defendants initially pointed guns at them. Even during the remainder of the search, Defendants held their guns by their sides in a ready-to-shoot position. When the search concluded, neither Russell, Marie, nor Jasmine were charged with a crime. A month after the search, Marie suffered a stroke.

According to Defendants, the searches produced "cocaine, drug paraphernalia, cash, jewelry and other drug related articles." At the Suffield home, Defendants seized: money, two small bags with leafy material inside, two Rolex watches and two other brand watches, two cell-phones, a jar with leafy material inside, three chains, four bracelets, one ring, paper documents, a 1997 Cadillac Deville, a 2006 Dodge Charger, and a 2006 Ford pickup. At the Manistique home, Defendants seized: an empty suspected kilo wrapper, a clear plastic bag with white substance, two digital scales, and paper documents. Defendants allege that other than the confiscated cash, which Russell agreed to release to Defendant Redford Township ("the Township"), all of the items were returned to Plaintiffs. Plaintiffs, however, contend that some items have not been returned. Plaintiffs allege that Defendants stole a wedding ring (allegedly not returned by Defendants), concealed-weapons permits, cash, bank receipts, mail, bills, photographs, and three automobiles (returned one week later).

### C.    RUSSELL II'S PROSECUTION

On November 8, 2007, six months after the searches, Officer Woodall filed a criminal complaint against Russell II for the knowing, intentional and unlawful possession of cocaine with the intent to distribute it. A federal magistrate judge issued a warrant for Russell II's arrest. On January 9, 2008, an order was entered dismissing the criminal complaint without prejudice so the government could gather more evidence and conduct further investigation.

### D.    PROCEDURAL HISTORY

On April 30, 2009, Plaintiffs filed their ten count complaint with the Court, wherein Plaintiffs alleged that Defendants and the Township deprived Plaintiffs of certain statutory and Constitutional rights. The Court dismissed Plaintiffs' Assault and Battery, False Arrest/False Imprisonment, Malicious Prosecution, and Gross Negligence state-law claims. On October 26, 2009, Plaintiffs filed an amended complaint with the counts that the Court retained jurisdiction over. The amended complaint contains the following six counts: Count I (Excessive Force—42 U.S.C. § 1983); Count II (Illegal Search and Seizure—42 U.S.C. § 1983); Count III (Malicious Prosecution—42 U.S.C. § 1983); Count IV (Violation of the First Amendment—42 U.S.C. § 1983); Count V (Failure to Knock and Announce—42 U.S.C. § 1983); and Count VI (Constitutional Violations against the Township—42 U.S.C. § 1983). Plaintiffs seek compensatory and punitive damages pursuant to 42 U.S.C. § 1983 and costs, interest, and attorney fees pursuant to 42 U.S.C. § 1988.

## III.  LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; *there must be evidence on which the jury could reasonably find for the [nonmoving party]*." *Anderson*, 477 U.S. at 252 (emphasis added).

## IV. ANALYSIS

Plaintiffs allege violations of the Fourth Amendment and First Amendment under 42 U.S.C § 1983 against the individual Defendants, and against Defendant Redford Township for municipal liability under 42 U.S.C § 1983 based on its alleged failure to train and supervise its officers. Defendant Richardson specifically argues he is entitled to summary judgment because Plaintiffs

have not established he was an active participant in the raids. The Court disagrees and finds

Plaintiffs have shown sufficient evidence through Defendants' answers to Plaintiffs' written

interrogatories to deny Defendant Richardson summary judgment on that ground. *See Smith v. Ross*,

482 F.2d 33, 36 (6th Cir. 1973).

> We agree with appellants that a law enforcement officer can be liable
> under § 1983 when by his inaction he fails to perform a statutorily
> imposed duty to enforce the laws equally and fairly, and thereby
> denies equal protection to persons legitimately exercising rights
> guaranteed them under state or federal law. Acts of omission are
> actionable in this context to the same extent as are acts of
> commission.

*Id.* at 36. Defendants argue that they are entitled to summary judgment on the basis of qualified

immunity.[1]

### A. CLAIMS AGAINST INDIVIDUAL DEFENDANTS

### 1. Qualified Immunity

"Under the doctrine of qualified immunity, 'governmental officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have

known.'" *Phillips v. Roane Cnty.,* 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)). The Supreme Court has repeatedly held that the plaintiff has the ultimate

burden of proof to show that a defendant is not entitled to qualified immunity. *Harlow*, 457 U.S.

800, 818 (1982). *See also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). Only

---

[1]Defendant Richardson also seeks to dismiss Plaintiffs' state-law claims for assault and
battery, false arrest, false imprisonment, malicious prosecution, and gross negligence. However,
the Court finds that since Plaintiffs' state-law claims have previously been dismissed, Defendant
Richardson's motion is moot to the extent that it relates to Plaintiffs' state-law claims.

if "the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury" will it be submitted to the jury *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989)).

To determine whether a defendant is entitled to qualified immunity requires two inquiries:[2] "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Phillips*, 534 F.3d at 538-39. With respect to the second inquiry, the Supreme Court has stated:

> The determination as to whether the right was "clearly established" is a determination that "must be undertaken in light of the specific context of the case, not as a broad general proposition." In other words, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier v. Katz*, 533 U.S. 194, 202 (internal citations omitted).

The qualified immunity analysis recognizes that reasonable mistakes may be made regarding the legal constraints on particular police conduct. If the officer's mistake is reasonable, then qualified immunity applies. *Saucier*, 533 U.S. at 205-06. "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being

---

[2]The Sixth Circuit has applied either a three-step test or a two-step test, as employed here. The Sixth Circuit's more recent decisions also have applied the two-step test. *See, e.g.*, *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008); *compare Abel v. Harp*, 278 Fed. Appx. 642, 649 (6th Cir. 2008) (applying a three-step test but noting that the Supreme Court initially announced a two-step test).

sued." *Hunter*, 502 U.S. at 229.

### a. *Count I: Excessive Force*

The Fourth Amendment protects individuals from the application of excessive force by law-enforcement personnel. *Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir. 2000). The Court reviews claims of excessive force under a standard of reasonableness. *Saucier*, 533 U.S. at 209. The Court accordingly views the use of force from the perspective of a reasonable law-enforcement officer on the scene rather than retrospectively. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The analysis is to be conducted under the totality of the circumstances and without regard to intentions or motivations. *Id.* at 397. The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The Court's analysis must "embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

When resolving issues of excessive force, the Court must "carefully balance the nature of the intrusion on the [individual's] Fourth Amendment rights against 'the countervailing governmental interests at stake.'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). Whether law-enforcement officials employed the least forceful alternative is not determinative in excessive-force claims. *See Tallman v. Elizabethtown Police Dep't,* 167 Fed. Appx. 459, 463 (6th Cir. 2006). Accordingly, "not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Burchett v. Kiefer*, 310 F.3d

937, 944 (6th Cir. 2002).

Here, the Court finds that Plaintiffs have made sufficient allegations to make out that a constitutional violation may have occurred with respect to whether the individual Defendants applied excessive force in violation of the Fourth Amendment. Plaintiffs base Defendants' application of excessive-force claim on the following alleged acts: (1) Russell was placed on the floor, even though half of his body was covered in medical bandages; (2) Marie was threatened that she would be hit with a gun; (3) Marie also was grabbed and pushed onto a couch, which caused bruises; and (4) Russell, Marie, and Jasmine had guns pointed at them for thirty minutes. Relying on *Miller v. Sanilac Cnty.*, 606 F.3d 240, 253 (6th Cir. 2010), Plaintiffs argue that these acts by Defendants amount to gratuitous violence.

In *Miller*, the plaintiff alleged that the officer spun plaintiff around, slammed him against his vehicle and kicked his feet apart during a traffic stop. *Id.* Although the plaintiff admitted he was not hurt, the Sixth Circuit determined a jury could reasonably find such actions by the officer to constitute excessive force when "the offense is non-violent, the arrestee posed no immediate safety threat, and the arrestee had not attempted to escape and was not actively resisting." *Id.* at 253-254. Here, Plaintiffs further allege that they were not suspected of committing violent crimes, posed no immediate threat to Defendants' safety, made no attempts to evade or escape the residences, and made no attempts to resist arrest.

In response, Defendants contend that it is reasonable and necessary for an officer to draw his weapon to avert any potentially violent situation when executing a search warrant for narcotics, since such searches could lead to violence. Defendants rely on *Ingram v. City of Columbus*, 185 F.3d 579, 591 (6th Cir. 1999), which held it is reasonable for police to handcuff and detain plaintiffs

with the display of firearms when the police act out of "a justifiable fear of personal safety." Here, Plaintiffs alleged that Russell was half-encapsulated in medical bandages, none of the occupants of the home had violent weapons, and nothing indicated Russell or Marie were not complying with the Defendants' orders.

Defendants further aver that holding Plaintiffs at gun point or leaving their guns drawn in a ready-to-shoot position was not an application of force, but merely a show of force which other courts have distinguished. *See Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988) ("By giving the police officer the ability to pull out and point a service resolver at someone without risking tort liability, he may be able to abort a potentially violent situation."). The Court, however, must review all of Defendants' actions together when assessing whether Defendants' application of force was excessive. Therefore, even if the Court were to agree with *Hinojosa*'s rationale, from the totality of the circumstances the Court finds that Plaintiffs have made sufficient allegations to make out a claim for application of excessive force. *See Robinson v. Solano Cnty.*, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc) (pointing a gun at an unarmed suspect who poses no danger constitutes excessive force).

Moreover, although Defendants point to Plaintiffs' absence of serious injuries and absence of subsequent medical treatment to show that the application of force was reasonable, such arguments go to Plaintiffs' damages. According to Plaintiffs, Marie had bruises on her arms and had to be hospitalized one month after the incident for a stroke. Although Plaintiffs do not specifically allege that Marie's hospitalization is attributable to Defendants' actions, Plaintiffs need not suffer serious injuries for force to be unreasonable under Sixth Circuit precedent. Therefore, viewing the evidence in the light most favorable to Plaintiffs, the Court finds under the first inquiry

that Plaintiffs have made sufficient allegations for the Court to hold that a constitutional violation may have occurred. *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) (detaining a suspect using guns and handcuffs violated the Fourth Amendment as there was "simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used").

Second, in the Sixth Circuit, it is clearly established that the authority of officers to detain the occupants of a premises during a search for contraband is limited and that officers are only entitled to apply reasonable force when detaining the occupants. *Vance v. Wade*, 546 F.3d 774, 784 (6th Cir. 2008); *Michigan v. Summers*, 452 U.S. 692, 704-06 (1981); *Muehler v. Mena*, 544 U.S. 93, 98 (2005). Given the facts and circumstances in this case, a reasonable officer may not understand he was violating Plaintiffs' rights. *See Saucier*, 533 U.S. at 202 ("The determination as to whether the right was 'clearly established' is a determination that . . . 'the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'")(internal citations omitted). Once the homes were secured, the Defendants only continued to detain Plaintiffs during the remainder of the searches. Specifically, Russell, Marie, and Jasmine were not even handcuffed. The Defendants could have made a reasonable mistake about their personal safety and the kind of force to use when entering the homes, placing Plaintiffs on the floor, and holding Russell, Marie, and Jasmine at gun point for a period of time. *See Saucier*, 533 U.S. at 205-06 (stating qualified immunity still applies if the officer's mistake is reasonable); *Ingram*, 185 F.3d at 579 (holding that it is reasonable for police to handcuff and detain plaintiffs with the display of firearms when the police act out of "a justifiable fear of personal safety.") Accordingly, the Court finds that the individual Defendants are entitled to qualified immunity.

**b.        *Count II: Unreasonable Search and Seizure***

*i. Search*

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The Fourth Amendment provides that no search warrant may issue "but upon probable cause supported by Oath or Affirmation and particularly describing the place to be searched and the person or things to be seized." Probable cause exists if there is a "fair probability" or reasonable grounds for belief, supported by less than prima facie proof but more than "mere suspicion" that police would find evidence of a crime at the location of the proposed searched. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) & *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). The probable cause determination is limited to the four corners of the affidavit. *Jackson*, 470 F.3d at 306. Such determination is based on the totality of the circumstances. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

(a).    Information Based on Confidential Informant

Where the information contained in the affidavit is based on a confidential informant, probable cause may exist "when there is some independent corroboration by the police of the informant's information." *Jackson*, 470 F.3d at 307 (quoting *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000)). Plaintiffs argue that probable cause did not exist because the search warrants were supported by a confidential informant. The confidential informant's prior track record of veracity or criminal background was also not stated in the affidavit. However, the unnamed informant's reliability was corroborated by an investigation conducted by Officer Jones. Therefore, the Court finds that, a fair probability existed, given the totality of the circumstances that Defendants

would find evidence of narcotics crimes. A confidential informant's information that Russell II was involved in the illegal possession and sale of cocaine was corroborated by an independent investigation by Officer Jones. The investigation itself provided additional information, and Officer Jones's made a controlled purchase of cocaine at the residence.

    (b).     Stale Information

In the context of drug crimes, information goes stale very quickly "because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009). But evidence of ongoing criminal activity will generally defeat a claim of staleness. *See United States v. Canan*, 48 F.3d 954, 958 (6th Cir. 1995) (holding that though conduct described in an affidavit was four years old, evidence of an ongoing nature defeated a claim of staleness). Moreover, "where recent information corroborates otherwise stale information, probable cause may be found." *United States v. Henson*, 848 F.2d 1374, 1381-1382 (6th Cir. 1988).

In addition, Plaintiffs attack the timeliness of the information found in the affidavits used to create probable cause. Plaintiffs argue that the information is stale and cannot be the basis for probable cause because a paper wrapping and green leafy material obtained from the garbage of the Suffield home and drug activity thirty-five hours prior to the magistrate judge signing the search warrants was too old. Plaintiffs are correct to assert that drug crimes pose a unique context. In this case, even though some information recounts activity that occurred in November 2006,the affidavits recount continuing activity from November 2006 to thirty-five hours before the affidavit was presented to the magistrate judge. In conjunction with a controlled purchase of cocaine from the Manistique home thirty-five hours before presenting the affidavit to the magistrate judge, from January 2007 until May 2007, the police also made several controlled purchases of cocaine and

arranged payoffs of narcotic debts with pre-recorded narcotic funds. All of the purchases occurred at the Manistique home or were documented in the affidavits with how they related to the Manistique or Suffield home. On March 7, 2007, a cigar wrapping and suspected end of a marijuana joint were found in the garbage placed in front of the Suffield home. On March 12, 2007, a blunt wrapper was located in the front lawn of the Manistique home. Because of the continuing narcotics activity documented in the affidavits and the controlled purchase of cocaine only thirty-five hours before the search warrants were signed, the Court finds that Plaintiffs' staleness claim must fail.

(c).     Unlawful Seizure of Plaintiffs' Items

Items seized during the execution of a search warrant must be described within the search warrant to prevent officers seizing one thing when the search warrant described another in violation of the Fourth Amendment. *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927). However, items not described in the search warrant may be seized if they "reasonably related to the offense which formed the basis for the search warrant." *United States v. Brown*, 49 F.3d 1162, 1169 (6th Cir. 1995) (quoting *United States v. Fortenberry*, 860 F.2d 628, 636 (5th Cir. 1988) (citation omitted)).

In *Wright*, the plaintiff argued, like here, that officers seizure of a leather vest, a holster, a red address book, a brown address book, a newspaper article, documents and a letter from his residence were outside the scope of the warrant. The *Wright* court held that seizure of the items was constitutional because all of the items directly related to the crimes charged in the affidavit attached to the search warrant—drug conspiracy and murder. *Wright*, 343 F.3d at 863. The court explained

> The vest was evidence of Wright's involvement with the Avengers
> motorcycle club; the holster indicated Wright's possession of a gun;
> the address books contained the names and phone numbers of
> co-conspirators including Chase and other Avengers; the newspaper

15

article about the murder of Moore showed that Wright had an interest in the crime; the documents linked Wright to his alias "Arthur Anderson"; and the letter from Chase described the connection of Wright and Chase to the drug conspiracy.

*Id.*

Plaintiffs argue that the officers' seized items outside of the scope of the search warrants when they seized money, three automobiles, bracelets, a diamond ring, watches, glasses, concealed-weapons permits, bills, and photographs from the Suffield home; and a property deed, birth certificates, a marriage license, and photographs from the Manistique residence.[3]

The search warrants authorized Defendants to seize the following items:

> All suspect controlled substances, all items used in connection with the sale, manufacture, use, storage, distribution, transportation, delivery or concealment of controlled substances. All books, records and tally sheets indicating sales of controlled substances. All prerecorded funds used to make purchases of controlled substances, all monies and valuables derived from the sale of controlled substances and any items obtained through the sale of controlled substances. All firearms and items establishing ownership, control, occupancy or possession of the above-described place. All photographs, photo albums, and video cassettes that depict controlled substances and/or proceeds from controlled substances. All bank records, bank statements and safety deposit keys.

Similar to this case, in *United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000), the search warrant was issued to find items related to narcotics transactions or the proceeds of narcotics transactions. The court noted that vehicles, jewelry, and money would be included as items that could be properly seized. *Id.* at 697. Here, the search warrant also authorized seizure of all items used in connection with the sale of controlled substances and records of controlled-substance

---

[3]Plaintiffs also argue that the Suffield home was absent from the search warrant. Plaintiffs argument must fail because it disregards the second search warrant for the Suffield home that Defendants' obtained.

transactions.  Therefore, Plaintiffs' argument that money, three automobiles, bracelets, a diamond ring, and watches were unconstitutionally seized is unpersuasive.  Although Plaintiffs' fail to specify the exact information contained in the bills and photographs, those documents along with the concealed-weapons permits, birth certificates,  a marriage license, and a property deed contain links and information that are reasonably related to the sale and possession of narcotics, possession and ownership of firearms, and records depicting controlled substances.  See *United States v. Savoy*, 280 Fed. Appx. 504, 511 (6th Cir. 2008) (holding that seizure of videotapes that officers believed at the scene contained information described in the search warrant, and then later discovering that some videotapes also contained information not related to crime did not make the seizure unconstitutional).

Here, the warrant allowed seizure of controlled substances and items used in the transportation, delivery or concealment of controlled substances, and all monies and valuables derived from the sale of controlled substances.  Accordingly, the Court finds that Plaintiffs have not made out a constitutional violation because the Defendants did not exceed the scope of the warrant by seizing the items taken from the home when the items seized by Defendants reasonably related to the suspected  possession and sale of illegal narcotics.  *See Blair*, 214 F.3d at 697 (holding that the Fourth Amendment is not violated when officers executing the warrant exercise minimal judgment as to whether a particular document falls within the described category).

( d).    Conclusion

Therefore, the Court finds that Defendants are entitled to qualified immunity as to Plaintiffs' claims that Defendants violated their Fourth Amendment rights by conducting an unreasonable search.

The tactics employed during a search are generally left to the discretion of the officers executing the search warrant. *United States v. Keszthelyi*, 308 F.3d 557, 571 (1979). "[W]ith respect to police/citizen contact, [the Fourth Amendment guarantees] vest only after [a] citizen has been seized." *United States v. Richardson*, 949 F.2d 851, 855 (6th Cir. 1991). "A seizure occurs where, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). The reasonableness of the seizure is determined by the totality of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

Addressing a similar context of the execution of a search warrant for drugs, the United States Supreme Court held officers have the authority to detain occupants of a premises while a proper search is being conducted. *Michigan v. Summers*, 452 U.S. 692, 704-06 (1981). In *Summers*, the court held that "for Fourth Amendment purposes, . . . a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705. The court stated "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* However, the removal of a suspect from the scene of the search is the point at which the Fourth Amendment demands probable cause. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 591 (6th Cir.1994).

Here, it is alleged that Russell, Marie, and Jasmine were held with guns pointed at them for thirty minutes of a ninety-minute search, and Russell II and Felicia were held at gun point, handcuffed, and then taken to jail without immediately being charged. Plaintiffs claim that both

seizures were unreasonable under the circumstances, relying heavily on *Ingram v. City of Columbus*, 185 F.3d 579, 591-92 (6th Cir. 1999). In *Ingram*, the court held that officers did not have the right to handcuff and detain plaintiffs at gun point while looking for a fleeing suspect in the home. *Ingram*'s holding is distinguishable from this case because probable cause was determined before entering the Suffield or Manistique homes, and Defendants had knowledge that Russell II pled guilty to assaulting an officer.

Defendants counter that the duration of the searches were a reasonable period of time for Defendants to secure the scenes, search for controlled substances, and make appropriate inquiries. The parties do not dispute that a reasonable person in Plaintiffs' circumstances would not have felt free to leave. Viewing the facts in the light most favorable to Plaintiffs, the Court finds that Russell, Marie, and Jasmine's ninety-minute detention could not lead a reasonable jury to find that Defendants unreasonably seized Russell, Marie, and Jasmine. Russell, Marie, and Jasmine were held at gun point for only thirty minutes and were not handcuffed during the search. The Defendants initial actions of placing Russell, Marie, and Jasmine on the floor only occurred so Defendants could exercised command of the situation. *See Summer*, 452 U.S. at 705. Felicia and Russell II also fail to make out a claim for a constitutional violation. Felicia and Russell II were only detained in the home for ten minutes, at which point they were transferred to a police car for thirty minutes. Felicia and Russell II were then taken to the Redford police station.

Under the totality of the circumstances—the short detainment, the knowledge of the risk of drug raids, probable cause supported by documented criminal activity occurring at both homes prior to the search, knowledge Russell II pleaded guilty to assaulting an officer, and items seized during the searches—a reasonable jury could not find that Defendants unreasonably seized Plaintiffs in

violation of the Fourth Amendment. *See Muehler v. Mena*, 544 U.S. 93, 103, 125 (2005) (Kennedy, J., concurring) (noting that the Fourth Amendment requires that the cuffs "be removed if, at any point during the search, it would be readily apparent to an objectively reasonable officer that removing the handcuffs would not compromise the officers' safety or risk interference or substantial delay in the execution of the search"); *Ingram*, 185 F.3d at 591 (holding that handcuffing and detention of Plaintiffs with the display of firearm can be permitted where there is a justifiable fear of safety); *Burchett v. Kiefer*, 310 F.3d 937, 942-43 (6th Cir. 2002) (noting that *Summers* involved a limited detention of the occupants of the home and was not intrusive).

Accordingly, the Court finds that Defendants are entitled to qualified immunity with respect to Plaintiffs' unreasonable search and seizure claims.

### c. *Count III: Malicious Prosecution*

To sustain a malicious prosecution claim, a plaintiff must show that (1) the criminal prosecution terminated in the plaintiff's favor, (2) probable cause did not exist, and (3) such prosecution was brought with malice. *McDermid v. Discover Fin. Servs.*, 342 Fed. Appx. 138, 145 (6th Cir. 2009). An officer has probable cause when "the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959).

Plaintiffs contend that each element can be shown. Specifically, Plaintiffs argue that Officer Woodall filed the criminal complaint to retaliate against Russell II once he hired an attorney to pressure Defendants to return his wife's wedding ring. The Court finds, however, without addressing each element, that probable cause existed for the arrest of Russell II. *See supra*, Subsection IV.A.1.b.i.a. Thus, viewing the facts in a light most favorable to Plaintiffs, the Court

finds Plaintiffs have not alleged sufficient facts to support a constitutional violation for malicious prosecution, and therefore, Defendants are granted summary judgment on Count III**.**

### d. *Count IV: First Amendment Retaliation*

For a plaintiff to state a First Amendment retaliation claim, it must be shown that the injury would likely stop a person of ordinary firmness from continuing to engage in that activity, that the conduct was constitutionally protected, and that the conduct was a motivating factor behind the government's actions. *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007). A plaintiff alleging a retaliatory prosecution claim must allege and prove the absence of probable cause. *Hartman v. Moore*, 547 U.S. 250 (2006).

Plaintiffs allege that Defendants violated Russell II's constitutional right to speak out against the Defendants regarding the illegal search and seizure, and Defendants' failure to return Plaintiffs seized property. The Court finds, however, that Defendants had probable cause to arrest and file a criminal complaint against Russell II. *See supra*, Subsection IV.A.1.b.i.a. Accordingly, Plaintiffs' First Amendment retaliatory prosecution claim fails as a matter of law and Defendants are granted summary judgment on Count IV.

### e. *Count V: Failure to Knock and Announce*

Failure to knock and announce prior to forcibly entering a location to execute a search warrant, absent exigent circumstances, is unreasonable under the Fourth Amendment. *United States v. Dice*, 200 F.3d 978, 982 (6th Cir. 2000). To determine whether officers have complied with the knock and announce rule requires the court to analyze the facts and circumstances on a case-by-case basis. *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).

Here, Defendants argue they complied with the knock and announce rule when executing

both search warrants, as supported by the police incident report and the affidavit of Officer Jones. Officer Jones contends they waited more than 15 seconds before entering the home. Through Plaintiffs' statements that are supported by their affidavits and answers to interrogatories, Russell II and Felicia contend they were only fifteen feet from the door Defendants entered and they never heard anyone until Defendants entered the home. Russell, Marie, and Jasmine contend that Defendants never knocked and announced when they entered the Manistique home.

Under the first inquiry of whether Defendants are entitled to qualified immunity, Plaintiffs have made sufficient allegations such that the Court holds a constitutional violation may have occurred. Under the second inquiry, Sixth Circuit precedent proves that the requirement to knock and announce was clearly established at the time Defendants entered Plaintiffs' homes. *See Dice*, 200 F.3d at 982. A reasonable officer would therefore understand entering Plaintiffs' homes without knocking and announcing would violate Plaintiffs' constitutional right. Thus, Defendants are not entitled to qualified immunity on this Count.

At this juncture, summary judgment is only appropriate where there is no genuine issue of material fact between the parties. A reasonable jury could find that Defendants failed to knock and announce as Plaintiffs contend; thus, a genuine question of material fact exists whether the constitutional requirement to knock and announce before a search warrant was executed was violated. Defendants are denied qualified immunity and summary judgment on Count V. *See Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008).

**f.** ***Conclusion***

For the reasons set forth above, the Court holds that the Defendants are not entitled to qualified immunity with respect to Count V, Plaintiffs' failure to knock and announce claim.

However, Defendants are granted summary judgment with respect to: (1) Count I, Plaintiffs' excessive force claim; (2) Count II, Plaintiffs' unreasonable search and seizure claims; (3) Count III, Plaintiffs' malicious prosecution claim; and (4) Count IV, Plaintiffs' First Amendment retaliation claim. *See Abel*, 278 Fed. Appx. at 649 ("If the analysis under the first step suggests that no constitutional violation transpired, then the analysis is complete, and we should grant summary judgment to the defendant.") (citation omitted).

## B. COUNT VI: CLAIMS AGAINST THE TOWNSHIP

In Count VI, Plaintiffs assert that the Township is liable for the actions by the individual Defendants that allegedly violated Plaintiffs' rights. A municipal or governmental entity can be found liable for the violation of a constitutionally protected right only if the plaintiff can establish that an officially executed policy, or the toleration of a custom of such municipality or governmental entity, leads to, causes or results in the deprivation of such rights. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Therefore, Plaintiffs must not only identify a policy or custom, they also must connect the policy or custom to the Township and show causation between the particular injury and the execution of that policy or custom. *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).

### 1. Failure to Train

"The [Township] is liable under § 1983 for failure to train if the Plaintiff[s] can prove three elements: (1) 'that a training program is inadequate to the tasks that the officers must perform'; (2) 'that the inadequacy is the result of the [Township]'s deliberate indifference'; and (3) 'that the inadequacy is 'closely related to' or 'actually caused' [Plaintiffs'] injur[ies].'" *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.

1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989))). "To show deliberate indifference, Plaintiff[s] 'must show prior instances of unconstitutional conduct demonstrating that the [Township] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Plinton*, 540 F.3d at 464 (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). "In the alternative, 'a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability.'" *Plinton*, 540 F.3d at 464 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

In this case, Plaintiffs have alleged that the Township did not train the officers in the correct application of force. Plaintiffs offer the following evidence from Officer Jones's and Officer Woodall's deposition transcripts: (1) Officer Jones stated he could not remember the last time he had such training; (2) Officer Woodall states the last time he had such training was at the police academy; and (3) the officers do not remember any formal training on the proper forms and procedures for obtaining or executing search warrants, although Officer Jones acknowledged he had on-the-job training. Plaintiffs fail to present sufficient evidence that the Township had prior notice that its officers were being inadequately trained, or that the Township ignored a history of abuse. Moreover, Plaintiffs also fail to show that the Township's failure to train its officers in recurring situations posed an "obvious potential" for constitutional violations. *Plinton*, 540 F.3d at 464. Thus, Plaintiffs have failed to demonstrate facts that would allow a reasonable jury to conclude that the Township is liable under § 1983 for failing to train its officers.

## 2. Failure to Supervise

A municipality may be liable for failing to supervise its officers if it can be shown that such failure was a deliberate or conscious choice by the municipality. *Kammeyer v. City of Sharonville*, No. 01-00649, 2006 U.S. Dist. LEXIS 24058, at \*33–34 (S.D. Ohio Apr. 26, 2006) (citing *City of Canton*, 489 U.S. at 389)). "Determining whether deliberate indifference is present in failure to train or supervise cases involves applying an objective rather than subjective standard." *Kammeyer*, 2006 U.S. Dist. LEXIS 24058, at \*34 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1970)).

Plaintiffs also argue that the Township failed to supervise its officers. Plaintiffs argue that the Township did not conduct performance evaluations on its officers or have a system in place to review or monitor its officers. Plaintiffs argue based upon the holding in *Kammeyer* that this renders the Township liable. The Court finds *Kammeyer* is distinguishable. In that case, the court held that the City of Sharonville's lack of review and monitoring system, in conjunction with the fact that the city had notice of the defendants' misconduct from recipients of the defendants' actions and the police station's command staff reports about their dissatisfaction with a specific defendant, presented a genuine issue of material fact. Here, Plaintiffs fail to show that the Township was on notice of a history of constitutional violations by its officers. Plaintiffs' responses to both motions for summary judgment do not contain any allegations or evidence that establish that the Township was deliberately indifferent in supervising its officers.

### 3.    Conclusion

For the reasons stated above, the Court grants Defendants' Motion for Summary Judgment on Count VI of Plaintiffs' complaint.

## V.  CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendant

Richardson's Motion for Summary Judgment [dkt 52] is GRANTED IN PART and DENIED IN PART.

IT IS ALSO HEREBY ORDERED that the remaining Defendants' Motion for Summary Judgment [dkt 54] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: November 18, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 18, 2010.


S/Marie E. Verlinde
Case Manager
(810) 984-3290